# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

KOREY MAURICE WESS,        )
                                      )
           Plaintiff,          )
                                      )
       v.                   )           No. 4:23-cv-00273-HEA
                                      )
MARYLAND HEIGHTS POLICE     )
DEPARTMENT, et al.,            )
                                      )
          Defendants.     )

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Korey Maurice Wess for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $8.50. The Court will therefore assess an initial partial filing fee of $1.70, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within

2

the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### Plaintiff's Prior 42 U.S.C. § 1983 Case

Before filing the instant action on March 3, 2023, plaintiff filed an earlier case with the Court that involves the same parties and nearly the same facts. Plaintiff's earlier case was filed on October 25, 2021. *Wess v. Dunn, et al.*, No. 4:21-cv-1281-HEA (E.D. Mo.). On February 16, 2022, he submitted an amended complaint pursuant to 42 U.S.C. § 1983, naming the Maryland Heights Police Department, Sergeant Scot Dunn, and Officer Andrew Heimberger as defendants. Sergeant Dunn and Officer Heimberger were sued in their individual capacities only.

In the amended complaint, plaintiff alleged that on September 2, 2021, while inside a residence at 176 Plum, Sergeant Dunn used excessive force against him during an arrest. Specifically, he asserted that Dunn punched him three times in the head, and tried to slam his face into the concrete floor. While this took place, Officer Heimberger stood by and watched, without saying or doing anything to help. According to plaintiff, Heimberger's inaction amount to a failure to intervene.

Because plaintiff was proceeding in forma pauperis, his amended complaint was subject to initial review pursuant to 28 U.S.C. § 1915. On February 17, 2022, the Court reviewed the amended complaint, and dismissed without prejudice the claim against the Maryland Heights

3

Police Department, as it was not a suable entity under 42 U.S.C. § 1983. The Court further explained that even if Maryland Heights was substituted as the proper defendant, plaintiff had not stated a municipal liability claim. However, the Court directed the Clerk of Court to issue process on Sergeant Dunn in his individual capacity as to plaintiff's claim of excessive force, and on Officer Heimberger in his individual capacity as to plaintiff's claim of failure to intervene.

On April 19, 2022, defendants filed an answer denying plaintiff's claims. The following day, the Court issued a case management order. On November 21, 2022, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Along with the motion, defendants also filed a statement of material facts.

According to those facts, plaintiff entered a residence at 176 Plum Avenue on September 2, 2021, where he threatened a woman and repeatedly punched her. A neighbor called 911, and Lieutenant Dunn[1] responded to the residence, where he spoke with the reporting party, and also heard a woman screaming inside. Lieutenant Dunn called to the woman, who told him to come in. He kicked in the door, and saw plaintiff standing over the woman. When Lieutenant Dunn pulled plaintiff away from the woman, plaintiff began resisting and refused to comply with verbal orders.

Lieutenant Dunn and plaintiff were engaged in a face-to-face struggle when Officer Heimberger arrived and attempted to help Dunn secure plaintiff. Because plaintiff continued to resist, Lieutenant Dunn swept plaintiff's legs and they both went to the ground, where plaintiff continued to struggle and refuse to submit to handcuffs. Lieutenant Dunn was able to get ahold of one of plaintiff's hands, but not the other. When plaintiff reached toward his waist with his free hand, Lieutenant Dunn hit him in the head three times. At that point, plaintiff gave up his free hand and allowed Dunn to handcuff him. Lieutenant Dunn later stated that he believed plaintiff was

---

[1] Plaintiff alleged that Dunn was a sergeant, while defendants asserted that he held the rank of lieutenant.

reaching for a firearm, and that he had prior knowledge of plaintiff's propensity for being armed and dangerous.

On March 22, 2023, the Court granted defendants' motion for summary judgment. With regard to Lieutenant Dunn, the Court determined he was entitled to qualified immunity because he had not used excessive force. In particular, the Court explained that the undisputed facts showed that Lieutenant Dunn was aware of plaintiff's previous violent acts against the woman at 176 Plum Avenue; that when Dunn entered the residence on September 2, 2021, he saw plaintiff standing over the woman, who was laying on the ground; that Dunn removed plaintiff from the woman; that plaintiff resisted Dunn's attempts to handcuff him; and that Dunn had a reasonable belief that plaintiff could be armed. Based on these facts, Lieutenant Dunn used reasonable force in his altercation with plaintiff. Additionally, the Court found that plaintiff had failed to demonstrate any violation of his clearly established rights. That is, the facts showed that Lieutenant Dunn acted reasonably, and therefore did not violate the Fourth Amendment's proscription against unreasonable seizures.

As to Officer Heimberger, the Court noted that because Lieutenant Dunn had not used unconstitutionally excessive force, Heimberger could not be liable for failing to intervene in the use of that force.

For these reasons, the Court entered judgment on behalf of defendants. Plaintiff subsequently filed a notice of appeal, which is still pending.

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Louis County Justice Center in Clayton, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the Maryland Heights Police Department, Sergeant Scot Dunn, and Officer Andrew Heimberger as defendants. (Docket No. 1 at 1). Sergeant Dunn and Officer Heimberger are sued

in both their official and individual capacities. (Docket No. 1 at 3-4). The complaint contains three separate claims: (1) a failure to preserve and produce materially exculpatory evidence; (2) the false filing of felony charges; and (3) violation of the Fourteenth Amendment.

In his first claim, plaintiff accuses the Maryland Heights Police Department and Sergeant Dunn of failing to preserve and protect materially exculpatory evidence. (Docket No. 1 at 4). He explains that on September 2, 2021, he was arrested on felony charges by the Maryland Heights Police Department. Plaintiff alleges that the "Maryland Heights Police Department has failed to preserve and produce body-worn camera footage that is full, complete and unedited by arresting officer Scot Dunn." (Docket No. 1 at 4-5). He asserts that according to body-worn camera policy and procedure, once a warrant has been issued for a felony or non-traffic misdemeanor, the corresponding body-worn camera file is considered evidence, and must be "handled in accordance with existing evidence handling procedures." (Docket No. 1 at 5).

During his state criminal case, plaintiff asserts that he "personally filed a motion to disclose evidence and a motion to compel evidence after requesting multiple times for [his] public defender to do so[,] to no avail." He believes that when "[a] police department embraces the video technology in question[,] and adopts specific policies to its use and retention, it assumes the responsibility to follow its own mandate." (Docket No. 1 at 5, 7). Plaintiff states that when officers either fail to activate their body-worn cameras, or fail to "preserve video evidence in the cloud," they are liable for "failing to produce evidence." (Docket No. 1 at 7).

Regarding Sergeant Dunn, plaintiff states that Dunn described the events of plaintiff's arrest in "great detail" in a police report. However, plaintiff insists that the details Sergeant Dunn provided "are all false and a heroic story of his imagination." He claims that footage from Sergeant Dunn's body camera submitted to the St. Louis County Prosecutor's Office "does not show any of the details he described."

6

Plaintiff also alleges that Sergeant Dunn "stated his body-cam did not activate," which plaintiff says is clearly false because Dunn "submitted body-cam footage to the prosecutor[']s office." (Docket No. 1 at 7-8). Moreover, he states that certain footage "has been deleted or destroyed." (Docket No. 1 at 8). This footage includes Sergeant Dunn kicking in the door, and plaintiff surrendering. Plaintiff further asserts that the "missing footage shows [him] laying on the ground waiting to be handcuffed," at which point Sergeant Dunn assaults him. (Docket No. 1 at 9). He contends that this is a violation of his rights under the Fourteenth Amendment. The Court notes that it has previously determined that Sergeant Dunn did not commit excessive force while arresting plaintiff.

In his second claim, plaintiff asserts that Sergeant Dunn filed false felony charges against him, and engaged in malicious prosecution. By way of explanation, he states that on September 2, 2021, Sergeant Dunn "filed false charges of burglary [and] kidnapping on [him] for the sole purpose" of keeping him "confined with a high bond." Plaintiff notes that Sergeant Dunn arrested him for domestic assault, but after learning about his prior convictions for burglary and kidnapping, added those charges too. (Docket No. 1 at 9-10). Plaintiff concludes that the charges were "false" and "filed with malicious intentions." (Docket No. 1 at 10). He also argues that the "details in the written affidavit to the judge to obtain a warrant are also false." Plaintiff states that Sergeant Dunn "broke many laws and participated in much criminal activity in the process of [trying] to falsely keep [him] incarcerated."

Finally, in his third claim, plaintiff asserts another violation of the Fourteenth Amendment, this time against Officer Heimberger. He states that on September 2, 2021, "while being arrested by [the] Maryland Heights Police Department," Officer Heimberger "obstructed the view of his body-worn camera by concealing his camera inside a clenched fist." (Docket No. 1 at 10-11). This allegedly kept the camera from recording the assault by Sergeant Dunn. (Docket No. 1 at 11).

Plaintiff also states that Officer Heimberger "stood by and watched" without intervening. He argues that body-worn camera policy states that officers "will not intentionally obscure the view of their body-worn camera." Plaintiff concludes that purposely obscuring the view of a body camera constitutes the destruction of evidence, violating his right to due process.

With regard to injuries, plaintiff states that "the failure to preserve and produce evidence" kept him "from being able to prove an illegal search and [seizure] in a criminal case due to excessive force during [his] arrest." (Docket No. 1 at 5). This "destruction of evidence" has subjected him to a lengthy jail term, and amounts to malicious prosecution. (Docket No. 1 at 5-6).

Based on these facts, plaintiff requests $500,000 in punitive damages, $800,000 for pain and suffering, and $500,000 "for an excessive bond and multiple undeserving days spent in jail." (Docket No. 1 at 12-13).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants failed to preserve and produce exculpatory evidence, and filed false felony charges against him. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Claim Against the Maryland Heights Police Department

Plaintiff has named the Maryland Heights Police Department as a defendant. A police department, however, is a department or subdivision of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit");

8

and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Because the Maryland Heights Police Department is not suable, the claim against it must be dismissed.

### B. Official Capacity Claims

Plaintiff has sued Sergeant Dunn and Officer Heimberger in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, plaintiff alleges that defendants Dunn and Heimberger are employed by the Maryland Heights Police Department. As such, the official capacity claims against them are treated as being made against Maryland Heights itself, their employer.

A local governing body such as Maryland Heights can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent

failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can potentially assert a municipal liability claim.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, a plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Here, plaintiff has failed to present facts supporting the proposition that Maryland Heights is liable due to an unconstitutional policy, custom, or failure to train.

First, with regard to policy, plaintiff states that Maryland Heights has a policy of treating body-worn camera footage of felony and non-traffic misdemeanor arrests as evidence. At no point does plaintiff suggest that the policy itself is unconstitutional. Instead, he argues that Sergeant Dunn and Officer Heimberger violated his rights by failing to follow the municipal policy that is

11

in place. This is insufficient to assert liability against Maryland Heights, because there are no facts indicating that the alleged actions of defendants Dunn and Heimberger were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Furthermore, the Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence, which is all that plaintiff has presented. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, as to custom, plaintiff has not provided facts establishing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Maryland Heights employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than a pattern, plaintiff's facts – such as they are – focus on the individual actions of two officers on a single date. As already noted, the Court cannot infer the existence of an unconstitutional custom based on a single occurrence.

Likewise, concerning a failure to train, plaintiff must show that Maryland Heights "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." This is typically done by alleging a "pattern of similar constitutional violations by untrained employees." Plaintiff has not asserted a pattern of similar constitutional violations. Instead, his facts focus on a single occurrence on a single date. A single occurrence is insufficient to demonstrate a pattern.

Finally, to the extent that plaintiff seeks to hold Maryland Heights liable for employing defendants Dunn and Heimberger, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government

may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all of these reasons, plaintiff has not stated a claim against Maryland Heights. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the official capacity claims against defendants Dunn and Heimberger must be dismissed.

## C. Individual Capacity Claims

Plaintiff has also sued defendants Dunn and Heimberger in their individual capacities. The claims are subject to dismissal for three reasons. First, they are barred by the doctrine of res judicata. Second, they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Third, plaintiff has simply failed to state a 42 U.S.C. § 1983 claim against Sergeant Dunn and Officer Heimberger.

### i.    Res Judicata Bars All Three Claims

"Under federal common law, the doctrine of res judicata, or claim preclusion, applies when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018). Res judicata applies against parties who participated in a prior proceeding and "had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731 (8th Cir. 2004). *See also Elbert*, 903 F.3d at 782 (explaining that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"). In short, the preclusion principle of res judicata prevents "the relitigation of a claim on grounds that were

raised or could have been raised in the prior suit." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990).

"[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). That is, "a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Banks v. International Union Electronic, Elec., Technical, Salaries and Machine Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004). A plaintiff's reliance "on different substantive law and new legal theories does not preclude the operation of res judicata." *See Lane*, 899 F.2d at 744. Rather, res judicata prevents a plaintiff from bringing a claim that "is dressed up to look different," and will bar a second claim based on "a new theory of recovery or…a new body of law…if it is based on the same nucleus of operative facts." *Id*.

The purpose of res judicata is to enhance judicial efficiency by ensuring the finality of decisions. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979). As such, res judicata is applicable even when the prior case is pending appeal, because the judgment has already taken effect. *See Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) (explaining that "a judgment's preclusive effect is generally immediate, notwithstanding any appeal"). *See also Clay v. United States*, 537 U.S. 522, 527 (2003) ("Typically, a federal judgment becomes final for…claim preclusion purposes when the district court disassociates itself from the case, leaving nothing more to be done at the court of first instance save execution of the judgment").

Res judicata has been applied to dismiss the complaints of plaintiffs proceeding in forma pauperis under 28 U.S.C. § 1915. *See Pointer v. Parents for Fair Share*, 87 Fed. Appx. 12, 2004 WL 230741, at *1 (8th Cir. 2004) (affirming district court dismissal under 28 U.S.C. § 1915(e)(2)(B) on the basis of res judicata); and *Henderson v. Engstrom*, 2014 WL 4678262, at *2

14

(D.S.D. 2014) ("Where res judicata applies to an IFP plaintiff's complaint, courts have dismissed the complaint under § 1915(e)(2)(B) for failure to state a claim or for being frivolous").

In this case, plaintiff's individual capacity claims against Sergeant Dunn and Officer Heimberger are barred by res judicata. As discussed more fully above, plaintiff has filed a prior 42 U.S.C. § 1983 civil rights action in this Court. That case has a preclusive effect on this action. First, both cases involve the same parties, to wit: defendants Dunn and Heimberger. Second, the prior suit was based on proper jurisdiction under § 1983. Third, the prior suit resulted in a judgment on the merits, in which the Court granted summary judgment for defendants Dunn and Heimberger, finding they had not violated plaintiff's constitutional rights during plaintiff's September 2, 2021 arrest.

As to the final element of res judicata – that both suits be based on the same claims or causes of action – the Court notes that the operative facts in the prior suit and the instant action are nearly identical. Both cases stem from plaintiff's arrest on September 2, 2021. Both are premised on plaintiff's allegations that Sergeant Dunn used excessive force against him, and that Officer Heimberger stood by and watched without intervening. In the first case, plaintiff argued excessive force and failure to intervene under the Fourth Amendment. In the second case, he cites to the Fourteenth Amendment, and contends that Sergeant Dunn and Officer Heimberger did not properly capture his arrest on their body-worn cameras, which would have recorded the alleged excessive force and failure to intervene. Plaintiff also asserts for the first time his contention that Sergeant Dunn maliciously filed false charges against him.

As noted above, res judicata bars claims that were raised in a prior suit, or that could have been raised in a prior suit. Whether two claims are the same for res judicata purposes is determined by looking at the factual predicate for the claims. Here, the factual predicate is the same, involving Sergeant Dunn's actions during plaintiff's September 2, 2021 arrest, and Officer Heimberger's

15

inactions while observing the scene. Plaintiff is simply attempting to recover on a new theory. Whereas before he alleged excessive force and failure to intervene, he is now focused on his inability to get camera footage of the excessive force and failure to intervene, and has included a malicious prosecution claim for good measure.

The Court has already determined that Sergeant Dunn did not use excessive force, and that Officer Heimberger is not liable for failing to intervene. Now, plaintiff is trying to get a second bite at the apple, hoping to recover on new claims based on old facts, having already failed to recover on his prior ones. Res judicata bars such claims that could have been raised in prior litigation. Therefore, all three claims presented in this action must be dismissed.

### ii.     Heck Bar of Claims One and Three

Even if res judicata did not apply, the Court notes that plaintiff's first and third claims are *Heck* barred. The United States Supreme Court has determined that when a state prisoner seeks damages pursuant to 42 U.S.C. § 1983, the district court has to consider whether a judgment for the plaintiff would "necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 488 (1994). If it would, the district court must dismiss the complaint unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id. See also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (concluding that state prisoner's "claim for declaratory relief and money damages based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); and *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (explaining that *Heck* stood for proposition "that a prisoner should not be able to use a suit for damages to avoid established procedures, like habeas corpus, for challenging the lawfulness of the fact or length of confinement"). In other words, "to recover damages for allegedly unconstitutional conviction or imprisonment…a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Marlowe v. Fabian*, 676 F.3d 743, 746 (8th Cir. 2012).

Here, plaintiff's first and third claim both rest on the premise that defendants failed to record, preserve, and produce exculpatory evidence. In the first claim, plaintiff accuses Sergeant Dunn of somehow deleting or destroying part of his body-worn camera footage, while in the third claim, he alleges that Officer Heimberger covered his body-worn camera with his hand. Because of this, plaintiff states that he was unable "to prove an illegal search and seizure in [his] criminal case." This led to him being subjected to a lengthy jail term.

The Court has reviewed plaintiff's underlying criminal case on Case.net.[2] Following that review, the Court has determined that plaintiff was indicted on three counts stemming from the September 2, 2021 incident at 176 Plum Avenue. *See State of Missouri v. Wess*, No. 21SL-CR03768-01 (21st Jud. Cir., St. Louis County). Those counts consisted of first-degree burglary, second-degree kidnapping, and second-degree domestic assault, all felonies. On May 4, 2023, plaintiff pled guilty to domestic assault, and the State of Missouri dismissed the charges of burglary and kidnapping. That same day, plaintiff was sentenced to one year of imprisonment, and given credit for having completed the sentence. Plaintiff did not file an appeal.

In claim one and claim three, plaintiff asserts that evidence he deems exculpatory was either not recorded or not preserved. Due to this, plaintiff states that he could not produce this evidence in his criminal case to prove an unlawful search and seizure. If plaintiff were to succeed on these claims, it would necessarily imply the invalidity of his conviction. Pursuant to *Heck*,

---

[2] Case.net is Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

plaintiff cannot bring a 42 U.S.C. § 1983 case in these conditions unless he has shown that his conviction has been reversed, expunged, or otherwise made invalid. He has not done that. Therefore, even setting aside res judicata, plaintiff's first and third claims against Sergeant Dunn and Officer Heimberger must be dismissed as barred by *Heck*.

### iii.    Claim One Fails to State a Claim Against Sergeant Dunn

Even if his first claim was not otherwise barred, plaintiff has failed to state an individual capacity claim against Sergeant Dunn for failing to preserve and produce materially exculpatory evidence. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not alleged facts connecting Sergeant Dunn with a constitutional violation. Plaintiff states only that Sergeant Dunn's body-worn camera footage does not show everything that is in Dunn's police report, apparently because the camera did not activate. He insists that this is "false," and that Sergeant Dunn's police report is also "false," as well as "a heroic story of his imagination." Plaintiff suggests there is "missing footage" that shows him to be the victim of excessive force, and that this footage has been "deleted or destroyed."

18

There are no facts in the complaint to support any of plaintiff's assertions, or to demonstrate Sergeant Dunn's personal responsibility for violating his constitutional rights. More specifically, there are no facts establishing that Sergeant Dunn did anything to keep his body-worn camera from activating, or that such a thing is possible. There are also no facts demonstrating when Sergeant Dunn "deleted or destroyed" this supposed evidence, how he could have done this, or whether it is even possible for individual officers to access – much less manipulate – the footage from their cameras. Instead of facts, plaintiff relies on bare conclusions and speculation, such as his entirely unsupported statement that Sergeant Dunn's police report was "false." The Court is not required to accept plaintiff's conclusions or conjecture as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

As discussed above, plaintiff has not provided any factual allegations – as opposed to unsupported conclusions, labels, and speculation – to demonstrate that Sergeant Dunn did anything to prevent the preservation and production of exculpatory evidence. Clearly, plaintiff is upset that the body-worn camera footage in his case does not show what he believes it should show, but this alone is not enough to provide a causal link between Sergeant Dunn and the violation of one of plaintiff's constitutional rights. Therefore, plaintiff's first claim against Sergeant Dunn in his individual capacity must be dismissed.

### iv.   Claim Two Fails to State a Claim Against Sergeant Dunn

Plaintiff has also failed to state an individual capacity claim against Sergeant Dunn for malicious prosecution, even if this claim was not already barred by res judicata. The United States Supreme Court has determined that malicious prosecution is actionable under the Fourth Amendment. *See Thompson v. Clark*, 142 S.Ct. 1332, 1337 (2022). To establish malicious

19

prosecution, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022). Where probable cause exists "to support the plaintiff's arrest and the initiation of criminal prosecution against the plaintiff," the malicious prosecution claim fails. *See Brown v. City of St. Louis, Missouri*, 40 F.4th 895, 903 (8th Cir. 2022).

In this case, it is not clear that Sergeant Dunn initiated plaintiff's prosecution. Plaintiff alleges that Sergeant Dunn arrested him for domestic assault and then, after doing a background check, added charges of kidnapping and burglary. Plaintiff was indicted on all three charges by a grand jury, but the indictment does not list Sergeant Dunn as a witness, and he is obviously not a prosecutor.

Regardless, plaintiff's claim fails because he has not shown that his criminal proceeding was initiated without probable cause, which is the first element of a malicious prosecution claim. Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime. *See Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012). At no point does plaintiff even intimate that Sergeant Dunn lacked sufficient knowledge to believe that plaintiff committed a crime. The Court notes that plaintiff's indictment indicates that on September 2, 2021, plaintiff entered an inhabitable structure located at 176 Plum Avenue; that a woman was present in the structure; that plaintiff would not let this woman leave; and that plaintiff assaulted this woman. Plaintiff does not contest these underlying facts, or Sergeant Dunn's knowledge of them. Without even hinting at a lack of probable cause, plaintiff has failed to state a malicious prosecution claim.

In addition, plaintiff has also not presented any facts to support the second element of

20

malicious prosecution, that of malicious motive. To be sure, plaintiff accuses Sergeant Dunn of "malicious intentions," but provides no allegations to explain what he means. Contrary to this legal conclusion, plaintiff even acknowledges that Sergeant Dunn only added the charges after conducting a background check on his prior criminal history. To state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Here, plaintiff has done nothing more than name a cause of action, and formulaically assert one of the elements, without any facts to bolster the propositions. For this reason as well, plaintiff has failed to state a malicious prosecution claim. Therefore, plaintiff's second claim against Sergeant Dunn in his individual capacity must be dismissed.

### v.      Claim Three Fails to State a Claim Against Officer Heimberger

In his third claim, plaintiff accuses Officer Heimberger of violating the Fourteenth Amendment by placing his hand over his body-worn camera during plaintiff's arrest. Even if the Court was to assume this claim was not barred by res judicata and *Heck v. Humphrey*, plaintiff has still failed to state a claim. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). *See also Young v. Harrison*, 284 F.3d 863, 866 (8th Cir. 2002) ("Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right").

Here, plaintiff states that Officer Heimberger violated the Fourteenth Amendment by concealing his camera. However, the Court has not found – and plaintiff has not provided – any support for the proposition that he has a freestanding constitutional right to have officers film him

21

with their body-worn cameras.

Plaintiff suggests that Officer Heimberger's alleged actions amounted to the destruction of evidence. Under *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the bad faith destruction of evidence may constitute a denial of due process under the Fourteenth Amendment. The Court recognizes that a bad faith failure to create exculpatory evidence may also violate due process. *See United States v. Aguirre-Cuenca*, 2023 WL 245710, at *3 (4th Cir. 2023) (unpublished opinion) (assuming without deciding that *Youngblood v. Arizona* may apply "to the failure to create exculpatory evidence through [the] failure to activate a body camera"). Nevertheless, while plaintiff insists that Officer Heimberger prevented evidence from being created, he does not provide any facts indicating that this alleged evidence was material to his guilt or punishment in his criminal case. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). That is, plaintiff makes no effort to show what Officer Heimberger's camera captured that would have aided him in his felony domestic assault case. He simply states that "evidence" was destroyed, without any factual enhancement connecting this evidence to his due process rights. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement").

Plaintiff also alleges that Officer Heimberger's purported blocking of his camera amounted to a violation of policy. Regardless, the violation of a policy alone is not sufficient to support an action under 42 U.S.C. § 1983. *See Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"); *Phillips v. Norris*, 320 F.3d 844, 847

22

(8th Cir. 2003) (explaining that "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations"); and *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and…state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone").

For all of these reasons, plaintiff has failed to state a Fourteenth Amendment violation against Officer Heimberger. Therefore, plaintiff's claim against Officer Heimberger in his individual capacity must be dismissed.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.70 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

23

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 9th day of   June, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE